Schulte v. Leners is the next case for argument. Mr. Stafford. Thank you, Your Honor. May it please the court, counsel. I represent Mr. Ken Leners, town chairman of Little Town up in northern Wisconsin. The only issue in this appeal involves qualified immunity and whether Ms. Schulte can show that the constitutional right at issue here was clearly established at the time of the alleged violations. And we are here pursuant to 28 U.S.C. section 1291 because our motion to dismiss on qualified immunity on this issue was denied. I think the first point that one has to undertake in this analysis is defining the alleged constitutional violation and I look to the amended complaint to find that and I look at paragraph 70 and paragraph 71 and paragraph 46 and Ms. Schulte says that Mr. Leners' constitutional violations was shutting down and deleting the comment section on the town website. That's paragraph 70. Paragraph 71, deleting all comments related to the Leners' post. Leners deleted all comments on the Leners' post. In paragraph 46, Leners deleted all comments on the Leners' post. And the question I think that presents for all of us then is was it clearly established in September of 2022 that an elected official violates the First Amendment by deleting all comments from a government website and shutting down the ability for anyone to comment. Ms. Schulte says yes and the district court agreed with her and we disagree with that. But counsel before shutting down the website there was also selective editing. Select vetting? It's also alleged that there was basically selective editing of the comment section before it was shut down. There were threats made and she raises a claim of retaliation and threats to violate her First Amendment rights and we haven't raised that in this appeal because I think there's factual issues that need to be determined in regard to that issue and so that isn't at issue here. What is at issue is the shutting down and deletion of the comments and I think the key to distinction I think what you're getting at is she kind of makes this argument that first you shut down mine then you shut down everybody. No I think the argument that she's making is whether or not this being a government space was their First Amendment law out there as to what the government could and could not do in this particular forum. And so that's why the question being raised of whether or not there was selective editing becomes relevant. And so when the website was set up was there a policy in place for how the comment section would be regulated? It wasn't. It wasn't. And that leads us to the designated public forum and I don't think that's an issue for us today because we're not arguing on qualified immunity the first step of was there a violation. We're arguing on the second step and that is was it well-defined at the time? And I don't think that it was well-defined at the time that a governmental officers and town board chairman could not delete comments or could not shut down all comments and no longer allow comments on a website. We've got the cases that were cited by Ms. Schulte to the district court and then adopted by the district court but when you look at those cases each and every one of those was a case about can a government official ban somebody from following them on Facebook? Each and every one of them. Three were Facebook and then the fourth one the Trump case was in regard to Twitter. But all of them involved that issue and that to me is the problem here is that we are saying that somehow Ken Lenners should have extrapolated from the fact that you can't ban somebody from being a follower on Facebook or Twitter that you therefore can't delete all comments on a website and shut down the ability to comment on that website. And there's nothing out there in regard to the case law that tells us that that should have been the conclusion of a local governmental official much less the constitutional scholar which he is not. And so I think that there is a complete absence of that and then one of the points we raised in our reply brief and I think it's one that needs to be addressed is I look at Krasno and I look up and we've got two of the three panel members from Krasno but I look at Krasno and I say two months after Mr. Lenners acted Magistrate Judge Crocker looked at the issue in Krasno which is a little different than what we have here but it's along the same vein and said at that time two months after Mr. Lenners acted that the law was not well defined as to whether the University of Wisconsin could block individual posts on a Facebook or Instagram account in that case. So we have the judge saying that in November of 2022 and then three years later when the district court judge in this case rules he says the law was well defined and you should have known that this was illegal and it's hard for me to reconcile those two when we have two judges within the same district really addressing an issue from different perspectives and different points and coming to a different conclusion on the issue. There is not case law when you look at the... I want to make sure I understand exactly what you think is before us. I understand you to say that you are not seeking qualified immunity with respect to selective deletion of comments but only to closing down public comments. No, I don't believe there was selective deletion of comments. The district judge did. Are you seeking qualified immunity with respect to selective deletion of comments? I am seeking qualified immunity in regard to all deletion of comments including the... You're seeking qualified immunity with respect to selective deletion of comments. I don't believe... Which is what I think the district judge thought this case was about. I don't. I believe the district judge believed that the violation here was the deletion of all comments including those of Ms. Shulman. Look, when you close the public forum there's just no forum, right? Correct. The district judge's view was that there was a public forum when public comments could be posted but that there was a problem created by selective deletion. I can see that. You seem to be telling us that you don't see that as a problem and you only see the closure of the forum as a problem. No, I'm saying the district court saw as a problem. You can see why this leaves me puzzled about what's before us and indeed I'm now questioning whether we have appellate jurisdiction because if we don't know what this is about you can't use an interlocutory qualified immunity appeal to figure out what the case is about. The argument that Schulte put forward in the district court was that the deletion of her comments and then the deletion of all comments violated the Constitution. We're asking what are we here for? That's right. What are we here for today though? Both of those because the district court has said that both of those violated the Constitution or would have violated the Constitution. Where in the district court's opinion do you find a that shutting down the entire forum violates the Constitution? The shutting down? No, the deletion is what we're here on. The district judge was worried about selective deletion then followed by shutting down the forum and you seem to think this appeal is about shutting down the forum. No, and if I said that I misspoke Judge Easterbrook. This appeal is about the deletion of the posts that were posted. While the forum was open? While it was open. And the allegation is that Mr. Lenners deleted all posts. Those for and against him. And that is the issue is was there case law that said. Okay, that's fine. The issue is is there case law to support the conclusion that he should have known that. We've got ships passing in the night. I don't think you and the plaintiffs and the district judge agree on what case we have before us and as I say that's a significant problem for appellate jurisdiction. I can see I have a 45 seconds left. I'll reserve that for rebuttal. Thank you. Okay. Mr. Seidel. Thank you, Your Honors, and may it please the court. Charles Seidel for plaintiff appellee Elizabeth Schulte. This case implicates the core of the First Amendment in two ways. First, Ms. Schulte's comments were core on-topic political speech engaging in reasonable debate on an issue of public importance. What was the district courts holding? The district courts holding was that Mr. Lenners was not entitled to qualified immunity for on the First Amendment claims. For what concretely? For shutting down the forum? For selective deletion? For our understanding is that the district courts properly interpreted the complaint and considered the selective moderation and the banning of Ms. Schulte to be First Amendment violations. You know I think if you look at paragraph 70 of the complaint we say... I'm on the judge's order, page 20, last paragraph. Sorry, yes, Your Honor. Is that the holding? On page 20 of the district court's opinion? Mm-hmm. Is that why, for purposes of this interlocutory appeal, is that the issue? I think so, Your Honor. I mean I think the question here is simply whether case law established that viewpoint discrimination in interactive comment sections on a government site would violate the First Amendment and here the viewpoint discrimination that we allege was the selective moderation and then the banning of Ms. Schulte based on the message she was expressing in her comments and I understand that to be what the district court was expressing on page 20 into page 21 of of its opinion. It doesn't seem to be what the appellant is contesting. I don't disagree with that, Your Honor, and on, you know, if you look at page 27 of our brief, well, sorry, then that goes back to the jurisdiction question. Yes, on page 27 of our brief, we noted that, you know, to the extent that Mr. Leonards wants to depart from what the district court actually held and depart from what the complaint alleges to dispute what is alleged and what the claims actually are, that falls outside of the very narrow scope of issues he's allowed to raise in this interlocutory appeal. We cite Bayon for that proposition, but I think it's pretty well established in this court's case law that, you know, the narrow issues you're allowed to raise in this appeal are purely legal ones relating to whether law is clearly established and whether a constitutional violation occurred based on undisputed facts. I don't, you know, from their brief, I don't totally understand Mr. Leonards to be taking issue with any of those specific findings of district court, and I, we wouldn't object to, you know, an opinion dismissing this case for lack of jurisdiction, though obviously we would object to affirmance either. I'd like to address a couple other quick points. Just about the district court's, sorry, the magistrate's opinion in Krasno. I think that that actually undercuts Mr. Leonards' argument on this appeal, because if you look at the conduct here that occurred in the fall of September of 2022, the conduct in Krasno occurred in 2020, and so the district, you know, the magistrate in Krasno held that in 2020 it was unclear that the point of law there was not clearly established, but in the same breath the court wrote that by now it seems reasonably clear that, you know, viewpoint discrimination in interactive comment sections on government sites violates the First Amendment. So, you know, whatever you think about what the law was in 2020, and, you know, several of the consensus opinions we rely on didn't exist then, I think by 2022 it does seem clear. When you say consensus opinions, there was a very loud dissent for multiple judges in the Second Circuit case, Knight, and you may be aware that it was vacated as moot, so it counts for nothing, and there was a dissent in Krasno. It's hard to describe that as a judicial consensus. So, Your Honor, I mean, I think that the elements of this court has focused on... The dissenters may, of course, be quite wrong. I mean, that's the presumption about dissents, but to say it's all everybody agrees on X, and no, everybody doesn't agree. Well, sorry, two points, Your Honor. First, I mean, I think that the points that this court, sorry, actually, sorry, three points. One, you know, Mr. Leonards doesn't actually dispute whether a consensus of cases exists here. His only argument is that whatever consensus of cases exists doesn't apply. Well, we're back to the problem, but I don't really understand what the appellant is arguing. That's fair enough, but, you know, to your question, I think there's two points. One, the factors that this court has addressed when determining whether there is a consensus of cases out there is just whether the courts were unanimous, and it hasn't, you know, gone and looked at whether there were dissents and whether the opinions were unanimous, and, you know, whether essentially it's an accident of geography that has prevented this case from reaching this court and creating binding precedent. And here, as a matter of fact, Krasno did establish a very similar precedent that we note in our brief. I, you know, as to the dissent in Krasno, I think the focus, the dissent and the majority there disagreed about how to consider the extent and nature of the policies that the university had in place and how those affected whether or not the forum was government speech or whether it was a limited public forum. And that's not contested here. No. I mean, I think you heard in the opening argument that, sorry, in the opening there, that there was no policy in place at the time Ms. Schulte posted her comments, and I think that there can be really little question that when the government creates a forum that is compatible with speech, like the comments section in Krasno, you know, its intent was to facilitate speech and then places absolutely no restrictions on the content or character of speech that can occur in that forum, that it's an open forum, not government speech. You know, if you look at Shurtleff and, you know, the variety of other cases we've cited for this proposition, like Summum, the key question, you know, I'm sorry, in Planned Parenthood versus CTA, the key question in terms of whether something is government speech versus a forum is whether the government exercises any control at all in the selection of the content that appears in that forum. And in Krasno, I think that, you know, there was a question about when the university used algorithmic tools to exercise control beforehand over what could appear in the forum, was that more or less like a, you know, a university running an alumni magazine and selecting letters to the editor, for example. You know, I'll grant, I think, that that's a much harder case than this one, but I don't think that Mr. Lenders can escape liability by pointing to differences between this case and Krasno or this case and the other cases that make this case a much easier one. You know, the First Amendment principles at issue here don't have the wrinkles that some of those other cases had, and I think, you know, that is at least my reading of what animated the disagreement between the dissent and the majority in Krasno. You know, I guess I'd just finish by noting, you know, I think if you're looking for places in the complaint where it's pretty clear that we're alleging claims based on the selective moderation, I think paragraph, I'm sorry, I believe it's paragraph 34, specifically, you know, alleges that he deleted Ms. Schulte's post and that that is an action which in itself is blatantly unconstitutional and constitutes unlimited, unlawful viewpoint discrimination and violates Schulte's constitutional rights, and that's well before- Well, it might depend, at least according to the dissent in Krasno, on whether at the time the owner of the site had a policy that it was trying to carry out to make the speech its own. Yes. But I gather, at least as of the complaint, that the complaint doesn't allege that such a policy existed. No, the complaint alleges specifically that no policy existed. Well, yeah. I'm not sure you can allege a negative. Okay. We just have to assume, at this stage of the case, that there was no such policy. Yes, and I believe- Which was, as you remember, important to the dissent in Krasno. Yes, I completely agree. I mean, I think I heard my friend on the other side concede that there was no policy in place at the time here, and I think this court has made clear in Airline Pilots Association, for example, that government officials can't censor speech pursuant to post-hoc policies or effectively inoperative policies that lay dormant and or hidden. So I think that given the concession that there was- That's a matter of administrative law, which I take it does not apply to tiny towns in  I take that to be a matter- It's the Administrative Procedure Act and the holding of Chenery. I take it to be a matter of a First Amendment law, because the risk inherent in allowing post-hoc policy, censorship pursuant to post-hoc policies, is that officials will abuse discretion in creating post-hoc policies or inventing post-hoc policies as a pretext for censorship, which is what's alleged to have happened here. But I think none of that matters, because as a matter of fact, you heard in my friend's opening argument that he conceded that there was no policy here. So regardless of whether- I think that's consistent with the allegations of the complaint and consistent with what the district court held, but I think you're exactly right. The dissent in Krasno cared about what effect the policy in place had on the First Amendment character of the forum at issue. And here, there is no policy, and then the result that follows from that is immediate. From Shurtleff and Sumum and every other case in which the court says that what matters is the degree to control that is exercised over the speech in the forum. So for those reasons, if the court has no further questions, we'd ask that you either refer him or dismiss for lack of jurisdiction. Thank you, Counsel. Anything further, Mr. Stafford? I do have 44 seconds worth for you. Thank you, Judge. Two points. One, and I think the panel has already acknowledged this, we are constrained by the facts of the amended complaint because this was a motion to dismiss. So that's how we approach this. And then two, I would be remiss if I didn't come back up here and try and explain how we see the issue in this case, and that is that deleting Schulte's posts on the website did not violate the well-established constitutional right. So if I didn't say that clearly in my opening argument, that is how we see the issue in this case. Deleting, say it again? Deleting Schulte's posts on the website did not violate... Even in the absence of a policy? Even in the absence of a policy. You remember the flag case, the flags being flown in the plaza of Boston City Hall. The Supreme Court said that in the absence of a policy, you really have to take all comers. But nobody had applied that to a website in case law that a town chairman could look... I mean, maybe for constitutional scholars, you can make that leap and you can say, you know what, I'm going to analogize this and find this. The fact that Mr. Lenners is not a constitutional scholar is neither here nor there. The qualified immunity inquiry is objective. It doesn't matter what's in his head, if anything. And I don't particularize that to Mr. Lenners. I particularize that to any elected official, that they don't have to extrapolate flags to websites. Okay. Thank you. The case was taken under advisement.